# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHELLY HARRIS,<br><br>                Plaintiff,<br><br>vs.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>                Defendant. | Case No. 1:14-cv-00682 |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL THE PRODUCTION OF SALES REPRESENTATIVES' PARTIAL CUSTODIAL FILES

Plaintiff's motion acknowledges that her claims arise from the core theory that Lilly did not adequately warn of the risk of discontinuation symptoms when stopping Cymbalta treatment. Although North Carolina law provides that the relevant focal point in this failure-to-warn suit is the decisionmaking of the prescribing healthcare professional, Plaintiff moves to compel discovery from the files of sales representatives who never interacted with her prescribing doctor. Indeed, the sales representatives at the center of Plaintiff's motion visited two physicians who Plaintiff started seeing only *after* she had already stopped taking Cymbalta. One of those two physicians did not treat Plaintiff until six months after she discontinued Cymbalta; Plaintiff saw the other physician in only a single visit in which that physician, a neurologist, indicated that she did not believe that Plaintiff's symptoms were caused by neurological problems. Plaintiff simultaneously seeks to abandon a date limitation protocol for sales representative discovery that Plaintiff's counsel proposed in this and other Cymbalta litigation; that Lilly agreed to in good faith; and on which sales representative document discovery has proceeded in other litigation.

The Federal Rules envision that discovery will provide a vehicle for gathering facts relevant to the claims at issue and proportional to what is at stake in the litigation — not that they

will be wielded to force opposing parties to bear the burden of searching for, collecting, reviewing, and producing every marginally relevant document with only a tenuous connection to the facts at issue in the case. But Plaintiff fails to establish any connection between the sales representative discovery she seeks through this motion and the specific claims in this case.

In that vein, Lilly has already produced substantial discovery on the question of what information it shared with doctors generally, including a wide range of documents relating to Lilly's promotion and marketing of Cymbalta and materials provided to doctors. In addition, Lilly has produced information on sales representative training, and data regarding sales calls by Lilly representatives to Plaintiff's doctors. And, as Plaintiff notes, Lilly has agreed to provide documents from the files of two other sales representatives who called on the physician who prescribed Cymbalta to Plaintiff, and Lilly will make those sales representatives available for deposition.[1] *See* Pl. Mem. at 1 n. 1. The discovery sought here, by contrast, has no conceivable relevance to Plaintiff's claims and the Court should deny Plaintiff's motion.

## BACKGROUND

### I. Plaintiff's Claims

Cymbalta is an FDA-approved prescription medication used to treat various pain and psychiatric disorders. Plaintiff's case is one of many pending across the country, each of which claims that Lilly failed to warn adequately of the risk of potential symptoms upon discontinuation of Cymbalta. Of the cases litigated to a merits determination to date, Lilly has

---

[1] The sole issue with respect to those two sales representatives is whether, as discussed below in Section IV, the collection and review of documents from those representatives' files should be limited to the time period during which those representatives visited Plaintiff's physicians. Plaintiff first proposed that date range limitation to Lilly, and Lilly agreed to it. Indeed, Lilly had begun collecting those representatives' documents pursuant to the date limitations proposed by Plaintiff when Plaintiff's counsel withdrew their agreement to the date restriction shortly prior to the filing of this motion.

2

won summary judgment in two suits (including on the adequacy of the Cymbalta discontinuation warning) and prevailed in three trials involving four plaintiffs, including securing a jury finding that the Cymbalta warning was adequate. *See Hagan-Brown v. Eli Lilly & Co.*, 1:14-cv-01614-AJT-JFA (E.D. Va. Sept. 1, 2015) (jury verdict for Lilly on warning adequacy); *Ali v. Eli Lilly & Co.*, 1:14-cv-01615 (AJT/JFA) (E.D. Va. Sept. 1, 2015) (same); *Herrera v. Eli Lilly & Co.*, No. 2:13-cv-02702 (C.D. Cal. Aug. 10, 2015) (defense verdict for Lilly on all claims); *Hexum v. Eli Lilly & Co.*, No. 2:13-cv-02701-SVW-MAN (C.D. Cal. Aug. 18, 2015) (directed verdict for Lilly entered at close of plaintiff's case); *McDowell v. Eli Lilly & Co.*, 58 F. Supp. 3d 391 (S.D.N.Y. 2014) (granting judgment for Lilly on adequacy of warning), *reconsideration denied*, 2015 WL 845720 (S.D.N.Y. Feb. 26, 2015); *Carnes v. Eli Lilly & Co.*, No. 0:13-591-CMC, 2013 WL 6622915 (D.S.C. Dec. 16, 2013) (granting summary judgment to defendant).

An inherent risk of stopping any antidepressant therapy is the potential for a patient to experience certain unwanted effects, which the medical community describes as "discontinuation" symptoms. The medical community understands the potential for these symptoms, practice guidelines discuss this risk, and all antidepressant labeling includes information about this phenomenon. Since Cymbalta was first approved by the U.S. Food and Drug Administration ("FDA") in 2004, its label has included a detailed, three-paragraph warning about the risk of discontinuation symptoms. The label in place at the time of Plaintiff's prescription was approved by the FDA in 2012 and stated:

> Discontinuation of Treatment with Cymbalta
>
> Discontinuation symptoms have been systematically evaluated in patients taking Cymbalta. Following abrupt discontinuation in MDD placebo-controlled clinical trials, the following symptoms occurred at 1% or greater and at a significantly higher rate in Cymbalta-treated patients compared to those discontinuing from placebo: dizziness, headache, nausea, diarrhea, paresthesia, irritability, vomiting, insomnia, anxiety, hyperhidrosis, and fatigue.

3

> During marketing of other SSRIs and SNRIs (serotonin and norepinephrine reuptake inhibitors), there have been spontaneous reports of adverse events occurring upon discontinuation of these drugs, particularly when abrupt, including the following: dysphoric mood, irritability, agitation, dizziness, sensory disturbances (e.g., paresthesias such as electric shock sensations), anxiety, confusion, headache, lethargy, emotional lability, insomnia, hypomania, tinnitus, and seizures. Although these events are generally self-limiting, some have been reported to be severe.
>
> Patients should be monitored for these symptoms when discontinuing treatment with Cymbalta. A gradual reduction in the dose rather than abrupt cessation is recommended whenever possible. If intolerable symptoms occur following a decrease in the dose or upon discontinuation of treatment, then resuming the previously prescribed dose may be considered. Subsequently, the physician may continue decreasing the dose but at a more gradual rate [*see* Dosage and Administration].

Cymbalta Package Insert at 8 (September 2012), Ex. 1.

Plaintiff Shelly Harris was prescribed Cymbalta in October 2012 for the treatment of chronic neck and back pain. *See* First Amended Complaint, ECF No. 21-1, at ¶ 37; Reynolds Decl. Ex. 2 at 156-58. She took Cymbalta for approximately three months, stopping and re-starting the medication in mid-December 2012, and then ultimately stopping on January 8, 2013. *See* Reynolds Decl. Ex.2 at 213-16, 233, 253-54, 259-60. Plaintiff alleges that upon discontinuing Cymbalta, she experienced a variety of symptoms. First Amended Complaint ¶ 37. In January 2013, after stopping Cymbalta, Plaintiff sought treatment from Dr. Misty Sinclair, a neurologist to whom Plaintiff was referred for a consult as to whether symptoms she said she was experiencing were neurologically based. *See* Reynolds Decl. Ex. 2 at 262-63. Dr. Sinclair concluded that her symptoms were not neurological but were instead, in Plaintiff's words, a panic attack, and Plaintiff did not see Dr. Sinclair again. *See id.* In July 2013, six months after discontinuing Cymbalta, Plaintiff was referred to a psychiatrist, Dr. David Ruck, for evaluation for a possible anxiety disorder. *See id.* at 266-67. Plaintiff continued to see Dr. Ruck

4

for several months. *See id.* Neither Dr. Sinclair nor Dr. Ruck ever prescribed Cymbalta to Plaintiff, advised Plaintiff on discontinuing Cymbalta, or diagnosed Plaintiff's symptoms as having been caused by Cymbalta.

## II. The Discovery Record

### A. Lilly's Extensive Production of Marketing and Promotional Materials

Lilly has already produced more than 35,000 pages of documents relating to Lilly's communication with physicians, including Plaintiff's physicians, including:

- All advertisements and promotional materials directed at either health care professionals or consumers, as submitted to the FDA's Office of Prescription Drug Promotion, consisting of more than 15,000 documents;

- Lilly's Dear Healthcare Professional letters concerning Cymbalta;

- Documents reflecting inquiries from health care professionals and consumers to Lilly about Cymbalta discontinuation;

- Medical information letters sent to health care professionals concerning Cymbalta and discontinuation-emergent adverse events;

- Cymbalta brand plans;

- Market surveys and related materials concerning Cymbalta and discontinuation-emergent adverse events;

- Most recent training materials for sales representatives;

- Exemplars of packaging and accompanying materials for samples of Cymbalta;

- Spreadsheets tracking sales calls to Plaintiff's doctors;

- Records of any compensation paid to Plaintiff's doctors;

5

- Written agreements, contracts, liability releases, or legal documents between Lilly and Plaintiff's doctors; and
- Records of attendance by Plaintiff's doctors at Cymbalta-related programs sponsored by Lilly.

*See* Declaration of Brett Reynolds ¶ 3.

Many of these categories include the types of documents contained in sales representative files, particularly training materials, sales call tracking spreadsheets, and advertising and promotional materials. These documents are only a subset of the extensive discovery record in this litigation. Over the past three years of litigation, Lilly has produced more than three million pages of documents, and there have been eleven depositions of current and former Lilly employees,[2] including 30(b)(6) depositions on a range of topics.[3] This discovery touches on all aspects of the life cycle of Cymbalta, including development, approval, marketing, and post-marketing surveillance.

### B. The Discovery Dispute at Issue

Plaintiff's motion follows a long negotiation between the parties on the scope of sales representative discovery, including in other related cases being handled by the same counsel.

#### 1. Plaintiff's Original Requests and the Parties' Discussions

In her First Requests for Production of Documents, Plaintiff requested production of the complete "custodial file" — a term Plaintiff does not define — of every Lilly sales representative who called on her doctors regarding Cymbalta and every document that those representatives

---

[2] This total does not include Lilly sales representatives deposed in other Cymbalta lawsuits.

[3] Lilly's document productions in other, related Cymbalta discontinuation lawsuits have been produced to Plaintiff here, and the depositions of Lilly witnesses were cross-noticed in this litigation and are also, by agreement, applicable here.

6

showed to or left with those doctors. *See* Def. Amended Objs. & Resp. to Pls. First Set of Requests for Production No. 91 at 62-63, Ex. 3. Lilly objected to this request as overbroad, unduly burdensome, and not limited to Cymbalta and discontinuation-emergent adverse events. *See id.* at 63-64.

Lilly did, however, produce to Plaintiff a set of call tracking spreadsheets of the sales representatives who called on Plaintiff's physicians, which list the sales representatives by name and provide detail about the dates of their physician visits. Lilly also identified the sales representatives who called on Plaintiff's physicians in its responses to Plaintiff's interrogatories.

On October 13, 2015, Plaintiff's counsel wrote to Lilly's counsel, listing nine of the sales representatives who had called on Plaintiff's physicians, along with a date range for each of the representatives. *See* Reynolds Decl. Ex. 4. Lilly had not asked for date ranges to which the search of the sales representatives' files would be limited, but Plaintiff requested the "complete custodial files for each of the nine Lilly sales representatives listed [] for the date ranges requested." *Id.* Lilly's counsel responded on October 20, 2015, proposing a list of search terms that could be used to help narrow the request. *See* Reynolds Decl. Ex. 5. That list of search terms was derived from a list that had been partially negotiated between Plaintiff's counsel and Lilly's counsel in two other pending Cymbalta lawsuits in which similar disputes have arisen. Counsel for the parties continued to attempt to resolve the pending dispute, including waiting to see whether issues related to search terms could be resolved in other pending Cymbalta cases in a manner that would guide discovery in this case. *See* Reynolds Decl. Ex. 6.[4]

---

[4] In declining for the second time to centralize all of the pending federal Cymbalta cases in a multi-district proceeding, the Judicial Panel on Multidistrict Litigation noted that "the discovery that has occurred to date [in Cymbalta cases] has been substantial" and indicated that "informal coordination and cooperative efforts by the parties involved" would be appropriate to resolve the pending actions efficiently. *In re Cymbalta Prods. Liab. Litig.*, 2015 WL 5936936, *2 (J.P.M.L. (continued...)

7

On January 6, 2016, Plaintiff provided Lilly with a revised list of search terms, providing slight revisions to a list of terms agreed upon in other pending Cymbalta cases. *See* Reynolds Decl. Ex. 7. Lilly agreed to Plaintiff's proposed search terms. *See* Reynolds Decl. Ex. 7 (Feb. 19, 2016 E-Mail). Consistent with the position it had taken in other pending cases, Lilly agreed to provide search-term-limited email files of sales representatives who called on the physicians who prescribed Cymbalta to Plaintiff or who supervised her discontinuation from Cymbalta. *See id.* (Jan. 12, 2016 E-Mail). Accordingly, Lilly offered to provide documents from the files of sales representatives Susan Fee and Nicole Slagle, who visited Plaintiff's prescribing physician, Dr. Philip Mondi. *See id.* (Feb. 19, 2016 E-mail). As Lilly noted, the other sales representatives from whom Plaintiff sought discovery — Kevin De Bruhl, Stephen Russell, and Susan Schuler — only visited physicians who treated Plaintiff after she discontinued Cymbalta, so their communications could not possibly have a bearing on the decision to prescribe Cymbalta. Indeed, Plaintiff was not treated by one of the physicians, Dr. David Ruck, until six months after she stopped taking Cymbalta. She was treated by the other, Dr. Misty Sinclair, only a single time, at a consultation in which Dr. Sinclair, a neurologist, concluded that Plaintiff's symptoms were not caused by neurological injuries. *See id.*

2.  **Plaintiff's Counsel Seeks to Withdraw Agreement to Date Limitations**

On March 8, 2016, Plaintiff's counsel for the first time indicated that they no longer believed that date restrictions — which they had proposed in their September 23, 2015 letter — were appropriate. *See* Reynolds Decl. Ex. 7 (March 8, 2016 E-Mail). Lilly had long agreed to

---

Oct. 9, 2015). It is in this spirit that Lilly has attempted to resolve certain discovery disputes with Plaintiff's counsel on a "global" basis rather than having to litigate such disputes *in seriatim*.

8

those date limitations, and similar date limits have been applied during the process of collecting and producing sales representative documents in other cases litigated by the same counsel.

## **LEGAL STANDARD**

Under Rule 26, the scope of discovery is limited to nonprivileged, relevant materials that are "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Although relevancy is construed liberally, "[n]o one would suggest that discovery should be allowed of information that has no conceivable bearing on the case." *Republican Party of North Carolina v. Martin*, 136 F.R.D. 421, 425 (E.D.N.C. 1991) (quoting C. Wright & A. Miller, *Federal Practice and Procedure*) (internal quotation marks omitted).

While the concept of proportionality has long formed part of Rule 26, s*ee Nicholas v. Wyndham Intern., Inc.*, 373 F.3d 537, 543 (4th Cir. 2004), it was recently highlighted by the 2015 amendments to the rule, which "restore[d] the proportionality factors to their original place in defining the scope of discovery" in subsection (b)(1) to "reinforce[] the Rule 26(g) obligation of the parties to consider these factors in making discovery requests . . ." Fed. R. Civ. P. 26(b)(1) Advisory Comm. Note (2015). *See Eramo v. Rolling Stone LLC*, --- F.R.D. ---, 2016 WL 304319, *2 n. 2 (W.D. Va. Jan. 25, 2016) ("[G]iven the 2015 amendment, the court will put a greater emphasis on the need to achieve proportionality, in determining whether to grant [a] motion to compel.").[5] Even indisputably relevant materials are not discoverable where the

---

[5] The purpose of the 2015 amendments was "to focus discovery . . . on what is truly necessary to resolve the case . . ." *Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, No. 12-CV-03012-WJM-NYW, 2016 WL 277721, at *1 (D. Colo. Jan. 22, 2016) (citing Roberts, C.J., 2015 (continued...)

9

discovery sought lacks proportionality to the needs of the case. *See Henry v. Morgan's Hotel Group, Inc.*, No. 15-cv-789, 2016 WL 303114 at *3 (S.D.N.Y. Jan 25, 2016) ("[T]he amended Rule is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information.") (internal quotation marks and citation omitted).

## ARGUMENT

Plaintiff's motion to compel seeks discovery with only tenuous relevance, at best, to the claims in this case and far outstrips any reasonable notion of proportionality. Plaintiff's claims center on whether Lilly failed to warn Plaintiff's prescribing physicians about the risk of discontinuation. Accordingly, Lilly has agreed to provide certain emails from the files of agreed-upon sales representatives who called upon Plaintiff's prescribing physician, Dr. Mondi, and to allow Plaintiff to depose those representatives. But the fact that discovery related to the physicians who prescribed Cymbalta may be relevant to this litigation should not open up discovery concerning sales representatives who called upon physicians who did *not* prescribe Cymbalta to Plaintiff. Those physicians' communications with Lilly about Cymbalta, unlike communications with a prescriber, cannot possibly have had a bearing on whether Plaintiff was prescribed Cymbalta, or how she was eventually advised to discontinue the medicine. And in addition to the lack of plausible relevance, Plaintiff's requested discovery would bring all of the attendant burdens of any document collection and production in modern litigation — the costs of

---

Year-End Report on the Federal Judiciary). As Chief Justice Roberts commented in explaining the 2015 amendments the Federal Rules, the amended Rule 26 makes it a "fundamental principle[] that lawyers must size and shape their discovery requests to the requisites of a case," and that courts and parties must "eliminate unnecessary or wasteful discovery." *See* Roberts, 2015 Year-End Report on the Federal Judiciary, *available at* *http://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf.*

collection, upload, attorney review for responsiveness and privilege, and production. The burden of such additional discovery on top of the immense discovery already provided in this matter bears no reasonable proportion to the needs of this case.

I.  **The Discovery Sought By Plaintiff Has Minimal Relevance**

Plaintiff insists that Lilly's sales representatives' communications with the physicians who saw her after she discontinued Cymbalta — even the physician she did not see until six months after she discontinued Cymbalta — are "highly relevant" to her claims. Pl. Mem. at 10. But in support of her assertion, Plaintiff points to examples highlighting the relevance of *prescribing* physicians. For instance, Plaintiff cites to an order from *Hexum v. Eli Lilly and Co.*, No. 2:13-cv-02701-SVW-MAN (C.D. Cal.), another Cymbalta suit in which the Court granted Lilly's directed verdict motion. The dispositive evidence in *Hexum* was the *prescribing* physician's knowledge of Cymbalta's risks and benefits and whether he had read the allegedly-inadequate Cymbalta label, not the knowledge of or Lilly's communications with physicians who did not treat the plaintiff until months after stopping Cymbalta.

Other cases cited by Plaintiff similarly focused on discovery related to communications to prescribing physicians. *See In re Actos (Pioglitazone-Prods. Liab. Litig.)*, No. 6:11-MD-2299, 2013 WL 4776346, at *4-6 (W.D. La. Sept. 3, 2013) (granting discovery of sales representative files to establish whether information known to the defendant was communicated to plaintiff's prescribing physicians); *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 479 (N.D. Ind. 2009) (considering discovery of files of sales representatives who called the plaintiff's prescribing physician).[6] Plaintiff does not cite a single case supporting her argument that

---

[6] A third case cited by Plaintiff, *Baker v. Bayer Healthcare Pharm. Inc.*, No. 13-cv-00490, 2014 WL 5513854 (N.D. Cal. Oct. 31, 2014), concerned *call notes* showing sales representatives'
(continued...)

11

physicians who simply record a plaintiff's symptoms after the fact have the same relevance as the doctor who made the decision to prescribe Cymbalta in the first instance. The adequacy of the Cymbalta warning to the physician who initially prescribed Cymbalta, and the prescribing decision itself, are the paramount issues under Plaintiff's theory that Plaintiff would not have been prescribed Cymbalta had Lilly provided a stronger warning. The discovery Plaintiff seeks relating to after-the-fact treating physicians does not help resolve those issues.

Further, Plaintiff cites no support for her assertion that "courts and juries deciding other Cymbalta withdrawal cases have focused on whether plaintiffs sought treatment for their withdrawal symptoms and whether plaintiffs were diagnosed with Cymbalta withdrawal." Pl. Mem. at 8-9. In fact, the two courts that granted summary judgment in Lilly's favor did so by looking to the testimony of the plaintiff's Cymbalta *prescriber*, not any other physician. *See McDowell*, 58 F. Supp. 3d at 406-07 (granting summary judgment to Lilly because of prescriber's knowledge of discontinuation risks); *Carnes*, 2013 WL 6622915 at *6-*7 (granting summary judgment to Lilly because of prescribers' knowledge of discontinuation risks). And in any event, Plaintiff does not explain how sales representative files shed light on these factual issues, which are more likely to be illuminated by doctors' medical records (which Plaintiff has) or doctors' testimony (which Plaintiff has not yet sought). Moreover, Plaintiff's prediction that "Lilly's anticipated defenses focus on the treating doctors' knowledge of Cymbalta and its risks," Pl. Mem. at 9-10, is undermined by the fact that Lilly has not sought to depose Drs. Ruck and Sinclair.[7] Dr. Sinclair only saw Plaintiff once, after she discontinued Cymbalta, and Dr. Ruck

---

visits to doctors, not custodial files. In this case, Lilly has already produced the available notes that Plaintiff requested, which show Lilly's sales representatives' visits to Plaintiff's physicians.

[7] Although Lilly had previously served deposition notices for Drs. Ruck and Sinclair because they were identified as relevant persons with knowledge in Plaintiff's Rule 26(f) disclosures, (continued...)

12

Case 1:14-cv-00682-LCB-LPA   Document 31   Filed 04/04/16   Page 12 of 19

did not begin treating Plaintiff until six months after she discontinued Cymbalta, and treated her only for a few months. Lilly has no intention of focusing this case on their knowledge, and discovery on their communications with sales representatives will not help resolve the issues in this case.

Any arguable relevance of the files of the sales representatives who called upon Drs. Ruck and Sinclair is further undermined by the fact that the sales representatives whose files Plaintiff seeks last called upon Drs. Ruck and Sinclair several years before those physicians saw Plaintiff. As shown in the records that Lilly produced to Plaintiff, Kevin De Bruhl last called on Dr. Ruck in June 2008 and Dr. Sinclair in December 2009; Stephen Russell last called on Dr. Ruck in June 2009 and Dr. Sinclair in May 2006; and Susan Schuler last called on Dr. Ruck in July 2007 and Dr. Sinclair in February 2007. To take just one example, Susan Schuler's last visit to Dr. Sinclair in February 2007 occurred nearly *six years* before the single January 2013 visit in which Dr. Sinclair treated Plaintiff, and her last visit to Dr. Ruck was also six years before Plaintiff ever sought treatment from him. Indeed, *all* the sales representatives who are the subject of Plaintiff's motion last called upon Plaintiff's physicians more than three years before Plaintiff stopped taking Cymbalta and, subsequently, sought treatment from Drs. Ruck and Sinclair. It strains plausibility to suggest that any brief interactions that these sales representatives had with Drs. Ruck and Sinclair many years before Plaintiff became their patient could possibly have any bearing on Plaintiff's claim that Lilly did not adequately warn of the risk of Cymbalta discontinuation symptoms, particularly given that Drs. Ruck and Sinclair did not prescribe Cymbalta to her.

---

Lilly withdrew those notices after reviewing the medical records it collected and no longer intends to depose those two physicians.

13

## II. Lilly Has Produced Extensive Information On Its Communications With Doctors

Lilly has produced a robust universe of materials on Cymbalta's marketing and promotion, much of it touching on information Lilly communicated to doctors, including:

- Advertisements and promotional materials: over 15,000 documents comprising advertisements and promotional materials directed either at healthcare professionals or consumers.

- Spreadsheets showing visits by Lilly sales representatives and third-party contractors to Plaintiff's physicians.

- Annual brand strategy documents developed by the Cymbalta brand team.

Although Lilly does not concede the ultimate admissibility of these documents at trial, they go directly to the issues of ostensible concern to Plaintiff — Lilly's communications with doctors, including Plaintiff's doctors. Because Plaintiff has such information, and is free to depose her physicians to determine what, if any, of these materials they recall receiving or reviewing, and to inquire how such materials impacted their treatment decisions, it is difficult to see how additional discovery from sales representatives who called on Drs. Ruck and Sinclair could add to the body of discovery bearing on the central issues in this case.[8]

## III. Plaintiff's Discovery Proposal Violates Principles of Proportionality

Even if the Court finds that the documents sought here are relevant — and Lilly maintains that they are not — for these materials to fall within the scope of discovery, the Court must also find that they are "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

---

[8] Indeed, it is worth noting that with this vast array of information, three Cymbalta discontinuation trials involving four plaintiffs were tried to verdict without any discovery directly from sales representatives' files.

14

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Olivares v. University of Chicago*, No. 1:15-cv-713, 2016 WL 126757 (M.D.N.C. Jan. 11, 2016) (quoting Fed. R. Civ. P. 26(b)(1)). "[W]hen discovery requests approach the outer bounds of relevance and the information sought may only marginally enhance the objectives of providing information to the parties or narrowing the issues, the court must then weigh the request with the hardship to the party from whom the discovery is sought." *Piazza's Seafood World, L.L.C. v. Odom*, No. 07–413–BAJ–CN, 2011 WL 3664437, at *2 (M.D. La. Aug. 19, 2011).

As discussed above, the requested files do little to resolve the core issues in this case. Their possible discovery does not meet the Federal Rules' requirements for proportionality, because to produce them places a burden on Lilly not justified by their marginal relevance. Collecting these files requires running searches across both Lilly's current and archived email systems for a particular sales representative's name in the to/from/cc/bcc fields, then applying the agreed-upon search terms across those isolated collections. The results must then be de-duplicated and reviewed for privilege and relevance. Plaintiff's argument that Lilly could alleviate this burden by foregoing a relevance review, *see* Pl. Mem. at 12, asks Lilly to abandon the contours of discovery under Rule 26. Lilly should not be penalized for insisting on procedures that limit its production to only relevant documents in the scope of discovery, and a relevance review is appropriate to determine that the produced documents are in fact relevant. *See Makowski vs. SmithAmundsen LLC*, No. 08 C 6912, 2012 WL 1634832, at *3 (N.D. Ill. May 9, 2012) ("The Court will not waste time assessing . . . the applicability of a claim of privilege as to irrelevant documents that happen to contain a search term but have nothing to do with the issues in this lawsuit. . . . Even non-privileged materials may be withheld if they are not

15

responsive to one of Plaintiff's document requests."). Indeed, the court in another Cymbalta discontinuation lawsuit has rejected the plaintiff's argument that Lilly should forego relevance review in favor of only using search terms. *See Wheeler v. Eli Lilly and Co.*, No. 14-cv-1882, ECF No. 63 at 18-19 (S.D. Cal. Jan. 19, 2016) ("Even when a search protocol has been agreed upon, it is not uncommon or inappropriate for a party to conduct a relevancy review of the documents found using the search protocol prior to producing any documents.").[9]

While Lilly recognizes this is not an overwhelming burden, it nevertheless outweighs the likely benefit of such peripheral discovery. Given the marginal importance of the proposed discovery, the proportionality principles of Rule 26 dictate that such discovery is unjustified.

## IV. Date Ranges Are Appropriate for Narrowing Discovery

As articulated above, Lilly's position is that any discovery of the files of sales representatives who called on Drs. Ruck and Sinclair is not relevant and violates the principles of proportionality. However, with respect to the files of Susan Fee and Nicole Slagle, which Lilly has agreed to provide — and should the Court determine that some discovery of any additional sales representatives' files is appropriate — the Court should also order that Plaintiff must honor the parties' existing agreement that a date restriction be used to narrow the discovery sought and minimize Lilly's burden in reviewing and producing documents.

Plaintiff's counsel themselves first proposed the use of a date restriction when they first identified specific sales representatives whose files Plaintiff sought. *See* Reynolds Decl. Ex. 4.

---

[9] Plaintiff also contends that Lilly has not provided sufficient "data" about the specific sales representative files at issue in this case to allow Plaintiff to assess a claim of burden, suggesting that Lilly provide the number of search term "hits" for each proposed custodian. But to do so would itself require searches of Lilly's current and archived email systems, the export, processing, and loading of any documents onto a review platform, and the application of search terms to provide a "hit report." *See* Reynolds Decl. ¶ 4. Those efforts themselves are a substantial undertaking unjustified by the marginal relevance of the documents at issue here.

16

Although Lilly objects to the proposed sales representative discovery in this case on other grounds, Lilly has never objected to the use of date range restrictions to narrow the scope of discovery. Plaintiff's proposed date restrictions make sense: they reflect the outer bounds of the period during which each sales representative regularly called upon the relevant physician. Indeed, date restrictions have been applied in the context of sales representative discovery in other Cymbalta cases being handled by the same counsel representing the parties in this matter. And date ranges are commonly used to narrow the scope of discovery. *See, e.g.,* Thomas Y. Allman, Conducting E-Discovery After the Amendments: The Second Wave, 10 Sedona Conf. J. 215, 217 (2009) ("Courts expect parties to reach practical agreement on . . . date ranges . . . ."). In the event that Plaintiff's original proposed date range is applied in this case, the only materials excluded will be documents dating from before or after the sales representative's interactions with Plaintiff's physicians. At best, such documents are of exceedingly marginal relevance, because they cannot possibly contain any information about "what Lilly's representatives communicated to Dr. Ruck and Dr. Sinclair," which is Plaintiff's own explanation for why the sales representative files are relevant. Pl. Mem. at 10.[10]

## CONCLUSION

For the foregoing reasons, Lilly respectfully asks the Court to deny Plaintiff's motion to compel production of the sales representative files of Kevin De Bruhl, Stephen Russell, and Susan Schuler, and to confine production of the files of Susan Fee and Nicole Slagle to the date ranges previously agreed to by the parties.

---

[10] In support of their argument that no date range should be used here, Plaintiff's counsel attached a copy of a letter from another Cymbalta case handled by their firm, *McCabe v. Eli Lilly and Company* (D. Minn.). *See* Declaration of Khesraw Karmand Ex. H. It is noteworthy that despite their insistence that using a date range "excludes documents that are clearly relevant," *see id.* at 1, Plaintiff's counsel have since dropped their request to have Lilly re-produce sales representative files without date restrictions in the *McCabe* case.

Dated: April 4, 2016

Respectfully Submitted,
By: /s/Paul J. Osowski
Paul J. Osowski
N.C. Bar No.: 23423
Nelson Mullins Riley & Scarborough, LLP
100 North Tyron Street, Suite 4200
Charlotte, North Carolina 28202
Ph: (704) 417-3000
Fax: (704) 377-4814
Email: paul.osowski@nelsonmullins.com

Michael X. Imbroscio, *pro hac vice*
Phyllis A. Jones, *pro hac vice*
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20003
Ph: (202) 662-6000
Email: pajones@cov.com
mimbroscio@cov.com

*Attorneys for Defendant*
*ELI LILLY AND COMPANY*

# CERTIFICATE OF SERVICE

I, Paul J. Osowski, hereby certify that on the 4th day of April, 2016, I have served Plaintiff's counsel in this action with a copy of Defendant's Opposition to Plaintiff's Motion to Compel by filing the same through the Court's ECF system, which will effect service on:

> Whitney J. Butcher
> wjb@whitleylawfirm.com
> Whitley Law Firm
> 2424 Glenwood Ave., Ste. 201
> Raleigh, North Carolina 27608
>
> Khesraw Karmand
> Keller Rohrback L.L.P.
> 1129 State Street, Ste. 8
> Santa Barbara, CA 93101
> *Attorneys for Plaintiff*

Dated: April 4, 2016

By: /s/ Paul J. Osowski
Paul J. Osowski
N.C. Bar No.: 23423
Nelson Mullins Riley & Scarborough, LLP
100 North Tyron Street, Suite 4200
Charlotte, North Carolina 28202
Ph: (704) 417-3000
Fax: (704) 377-4814
Email: paul.osowski@nelsonmullins.com
*Attorney for Defendant*
*ELI LILLY AND COMPANY*